UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| PAMELA ASHBY, as Personal Representative of the Estate of TREVOR SAUNDERS, <br><br> Plaintiff, <br><br> v. <br><br> ANDROSCOGGIN COUNTY, ERIC SAMSON, JEFFREY CHUTE, LANE FELDMAN, WILLIAM GAGNE, TAMMY CHASE, JOHN CLEVENGER, PAUL HAMANN, MIRANDA KOLOGENSKI, JAMES LANGELIER, VICTORIA LANGELIER, JERRY LAROQUE, REBECCA LEDUC, BRYAN LITCHFIELD, REGINALD LITCHFIELD, ISAAC POLIQUIN, JANE DOE, and JOHN DOE, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No. 2:25-cv-00299-LEW |

**DEFENDANTS BRYAN LITCHFIELD AND JOHN CLEVENGER'S
MOTION TO DISMISS THE COMPLAINT
WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Bryan Litchfield and John Clevenger hereby move to dismiss the Complaint (ECF No. 1) for failure to state a claim upon which relief can be granted. In support of this Motion, Defendants Litchfield and Clevenger state the following.

**INTRODUCTION**

This case arises out of the death of Trevor Saunders who was serving a sentence at the Androscoggin County Jail ("ACJ"). Plaintiff has sued sixteen separate defendants in this action, plus unidentified correctional officers, Jane and John Doe(s) defendant(s). In Count I, Plaintiff

alleges pursuant to 42 U.S.C. § 1983 an Eighth Amendment claim against the Androscoggin County Defendants based on alleged unconstitutional policies, customs, and practices of permitting their medical staff to violate the rights of ACJ inmates. In Count II, Plaintiff alleges an Eighth Amendment claim against the individual correctional officers, including Litchfield and Clevenger, based on a failure to provide adequate medical care. With limited exception, Plaintiff fails to articulate what concrete action Litchfield or Clevenger took that could plausibly amount to an alleged constitutional violation. Instead, Plaintiff's Complaint relies primarily on legal conclusions devoid of facts and blanket allegations against all "ACJ Defendants," without distinguishing which individual took what action. Even so, the minimal interactions alleged against Litchfield and Clevenger do not permit an inference of deliberate indifference and therefore the Complaint fails to state a plausible Eighth Amendment claim against them. In the alternative, dismissal is warranted because Litchfield and Clevenger are entitled to qualified immunity.

## FACTS

The Complaint alleges the following facts, which must be taken as true for the purpose of this motion. On October 25, 2023, Trevor Saunders reported to the Androscoggin County Jail ("ACJ") to serve a 45-day sentence. Complaint ¶¶ 3-4, 57. Androscoggin County contracted with Correctional Psychiatric Services ("CPS") to provide health care services to inmates at ACJ. Complaint ¶ 42. Nurse Wendy Riebe, R.N., oversaw the provision of health care services to ACJ inmates. Complaint ¶ 49.

Trevor had a history of spinal cord stroke, his left-side mobility was limited, and he slept with braces on his left hand to prevent it from retracting. Complaint ¶¶ 58-59. Trevor reported this information when he was booked at ACJ. Complaint ¶¶ 61-62. Trevor also reported his

stroke and limited mobility to the ACJ medical department during his medical screening. Complaint ¶ 63. Trevor's mother, Plaintiff Pamela Ashby, brought Trevor's left-hand braces to ACJ, but he was not provided with the braces and without them, it was more difficult for Trevor to prevent and then properly care for the pressure ulcers he developed shortly after arriving at ACJ. Complaint ¶¶ 64-68.

On or before November 1, Trevor began developing pressure ulcers on his back and buttocks. Complaint ¶ 72. On November 2, Pam dropped off Trevor's medical records at ACJ; John or Jane Doe correction officer did not provide the records to the ACJ medical department and therefore they were not reviewed by any ACJ medical staff. Complaint ¶¶ 76-77. On November 4, Trevor was seen by a nurse at ACJ, who documented that he had two wounds; a nurse practitioner prescribed rotating dressing changes. Complaint ¶¶ 78-79. On November 6, Trevor was seen by a nurse practitioner for a telehealth visit, but she did not physically examine his wounds. Complaint ¶ 80.

On November 11, Trevor was seen at the ACJ medical department and reported that his wounds were painful and that the pain worsened when they contacted any surface. Complaint ¶ 81. The next day, Trevor reported feeling very ill and that his entire body hurt. Complaint ¶ 82. On November 13, an ACJ nurse evaluated Trevor. Trevor complained of chest and upper back pain, his heart rate was abnormally high (tachycardic), and he had diminished breath sounds in the base of his left lung; the nurse did not enter this note into the medical record, so it was not available for review by other providers involved in Trevor's medical care after November 13. Complaint ¶¶ 83, 86. The same nurse also suggested that Trevor was likely suffering from anxiety. Complaint ¶ 85.

Between November 13 and 15, Trevor rarely left his cell. He could not walk independently, and he writhed in pain and moaned for help in his bed. Complaint ¶ 89-90. On November 14, Trevor presented to a nurse in the ACJ medical department and the nurse determined that Trevor's wounds were worsening and had become a medical emergency. Complaint ¶¶ 92-93. Despite the nurse and the on-call medical department provider agreeing that Trevor needed to be seen outside the jail, Nurse Riebe refused to send Trevor outside the jail for medical attention. Complaint ¶¶ 94-95.

On November 15, Trevor was moved by wheelchair to a cell in observation so he could be more closely monitored by ACJ Defendants. Complaint ¶¶ 97-100. On November 15, Trevor was evaluated by an ACJ physician assistant in the presence of CO Jane/John Doe(s). Complaint ¶ 103. The PA determined that Trevor might be suffering from rhabdomyolysis, a life-threatening condition where damaged muscles release toxins into the bloodstream, or sepsis, an inflammatory response to infection that leads to organ failure and death if not treated promptly; the PA did not take any steps to provide Trevor with emergency medical care. Complaint ¶¶ 105-06.

Later on November 15, COs Jane/John Doe moved Trevor via wheelchair to ACJ's maximum security block where he was supposed to be monitored every 15 minutes. Complaint ¶ 110. On November 16, Trevor was too sick to get up and move and remained lying on his back; ACJ Defendants knew that it was dangerous and painful for Trevor to remain lying on his back due to his pressure ulcers. Complaint ¶¶ 111-112. On November 16, wound care was performed in Trevor's cell in the presence of COs Jane/John Doe. Complaint ¶ 115.

On November 17 at 8:20 am, Trevor fell off his bed and hit his head on his desk. Complaint ¶ 116. Shortly after, Trevor was moved via wheelchair back to observation cell by

ACJ Defendants Leduc, Litchfield, Littlefield, and Poliquin. Complaint ¶ 118. Trevor was weak and nodding off in the wheelchair; Litchfield and Poliquin lifted him out of his wheelchair to place him on his side on his bed. Complaint ¶ 121. Before they left, Trevor was lying on his back because he was physically unable to remain on his side and the ACJ Defendants took no steps to reasonably ensure that Trevor was properly positioned with pressure removed from his wounds. Complaint ¶¶ 122-123. ACJ Defendants Leduc, Litchfield, Littlefield, Poliquin and others observed Trevor's rapidly declining condition but took no steps to provide him with emergency medical care. Complaint ¶ 124. Trevor urinated on himself repeatedly while lying on his back. Complaint ¶ 125.

Around 9:00 am on November 17, Poliquin accompanied a nurse into Trevor's cell for a routine medication pass. Complaint ¶ 127. Poliquin observed that Trevor was unable to hold a cup of water or sit up to take his medication and that Trevor had urinated on the floor next to his bed. Complaint ¶¶ 128-129. That same day, Litchfield and a nurse entered the cell, and Trevor told them he could not move; Litchfield grabbed Trevor's uniform and rolled him to his side so that the nurse could change the dressing on his wounds. Complaint ¶ 133. The wounds were dark, odorous and obviously infected. Complaint ¶ 134.

During the evening of November 17, Clevenger and John Doe entered Trevor's cell with an ACJ nurse for a medication pass; Trevor could not sit up and attempted to pour Gatorade in his mouth while lying on his back. Complaint ¶ 136. Trevor could not take his medication without assistance. Complaint ¶ 136.

On November 18, Trevor was provided food; he was not able to eat it, and the tray was full when it was collected by Leduc. Complaint ¶ 137. Some hours later, Leduc returned with a nurse who was distributing medication; Trevor could not hold a cup of water so the nurse

5

attempted to prop hip up, but he could not sit up and fell back onto his bed. Complaint ¶ 138. Leduc placed the medication in his mouth and poured water into his mouth. Complaint ¶ 139. On the afternoon of November 18, Langelier, Larocque, and Leduc went into Trevor's cell to move him to maximum; he told them he was unable to sit up on his own. Complaint ¶ 140.Those officers lifted him and placed him in a wheelchair to transport him. Complaint ¶ 140. Chase and Langelier assisted with the transport and then Larocque lifted Trevor under the arms and dragged him into his cell. Complaint ¶ 143. Around 4:36 pm, Chase left a tray of food for Trevor; he did not eat any food and was slow to move. Complaint ¶ 146.

On November 18 at 6:48 pm, Hamann, Kologneski, and John Doe began performing checks in maximum every 15 minutes. Complaint ¶ 148. At 8:00 pm, Hamann, Kologneski, and John Doe escorted a nurse to Trevor's cell for a medical check and found him unresponsive on his bed. Complaint ¶¶ 149-150. Trevor's cause of death was determined to be lobar pneumonia; the pneumonia was the result of his untreated, infected pressure ulcers. Complaint ¶¶ 153-55.

## ARGUMENT

### I.     Legal Standard.

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must set forth facts sufficient to state a legal claim on which relief could be granted." *Giragosian v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010). When reviewing a motion to dismiss, courts apply a "two-pronged approach." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 10 (1st Cir. 2011). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." S*chatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Second, the court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in

the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* In addition, it is improper to rely on blanket allegations against all defendants. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011) (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009)) ("After all, 'we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.'); " *Hernandez v. Castillo*, 2010 WL 3372527, at *9 (D. P.R. Aug. 24, 2010) (quoting *Iqbal*) ("Plaintiff lumps together all five of the DOC secretaries who were at the helm of the Department during Plaintiff's fifteen or more years of allegedly excessive incarceration as defendants sharing equal responsibility for broadly-worded and generalized conduct that fails to rise above legal conclusion or, as the Supreme Court has articulated, the 'sheer possibility that a defendant has acted unlawfully.'").

## II. The Complaint Lacks Sufficient Factual Allegations to State a Plausible Eighth Amendment Claim for Inadequate Medical Care against Litchfield and Clevenger.

The deliberate indifference to serious medical needs of prisoners is proscribed by the Eighth Amendment. *Abernathy v. Anderson*, 984 F.3d 1, 6 (1st Cir. 2020) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). There are two prongs to a deliberate indifference claim. *Id.* The first prong is objective and requires that a plaintiff allege "as an objective matter, that he has a 'serious medical need' that received inadequate care." *Id.* (quoting *Leavitt*, 645 F.3d at 497) (cleaned up). "A serious medical need is that which 'has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Leavitt*, 645 F.3d at 497). The second prong is subjective. *Id.* at 6. "[T]he Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014). Accordingly, an "'inadvertent failure to

provide adequate medical care' does not give rise to a constitutional claim." *Id.* (quoting *Estelle*, 429 U.S. at 105-06, 97 S.Ct. 285). Deliberate indifference requires that "a prison official subjectively 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Burrell v. Hampshire Cty.*, 307 F.3d 1, 8 (1st Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Allegations of "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment" are insufficient to state an actionable Eighth Amendment claim. *Ruiz-Rosa v. Rullán*, 485 F.3d 150, 156 (1st Cir. 2007); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976)("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."). Prong two requires that a plaintiff allege "as to each named defendant, that he/she was aware of the serious need for treatment and still failed to provide treatment." *Garcia v. Terrico*, No. CV 24-012WES, 2024 WL 1198167, at *5 (D.R.I. Mar. 20, 2024); *Estelle*, 429 U.S. at 105-106 (noting that "an inadvertent failure to provide adequate medical care cannot be said to constitute" an Eighth Amendment violation).

Plaintiff's allegations against Defendants Litchfield and Clevenger are too "meager, vague, and conclusory" to state an actionable Eighth Amendment claim. *Haley*, 657 F.3d at 46; *see also Educadores Puertorriqueños en Acción v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) ("[I]n a civil rights action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why."). As described below, Litchfield and Clevenger had

8

minimal interactions with Trevor, and they were accompanied by an ACJ nurse during those interactions. While a court must draw reasonable inferences in favor of Plaintiff at this stage, it is not reasonable to infer, based on the meager allegations here, that Litchfield and Clevenger would have obviously recognized the need for medical attention, beyond what Trevor was already receiving, and that they purposefully denied him that care. Instead, the allegations against Litchfield and Clevenger amount to an assertion that the care provided by the nursing staff was inadequate, not absent. Such allegations are insufficient as a matter of law. *Estelle*, 429 U.S. at 105-106.

### A. Bryan Litchfield

Plaintiff alleges that Litchfield had two interactions with Trevor on November 17. First, Plaintiff alleges that Litchfield assisted in moving Trevor in a wheelchair back to an observation cell. Complaint ¶ 118. Trevor was weak and nodding off in his wheelchair. Id. ¶ 119. Litchfield and another CO then lifted Trevor from the wheelchair by his elbows and placed him on his side on the bed slab; before they left the cell Trevor was lying on his back as he was physically unable to remain on his side. Id. ¶ 122. While the Complaint generally alleges that "ACJ Defendants took no steps to reasonably ensure that Trevor was properly positioned on his side," there is no allegation that Litchfield was aware of the need to keep Trevor on his side, but even if the Court draws that inference, there are no facts that would allow the inference that Litchfield was aware of the potential consequences of not keeping Trevor on his side. Plaintiff's allegation with respect to this interaction that Litchfield "remained deliberately indifferent" is conclusory. There is no allegation that Litchfield, as opposed to the ACJ medical staff, was aware of Trevor's medical history or prior medical concerns. Litchfield's observations of an individual who was weak, nodding off, and needed to be moved into his cell does not permit an inference that

9

Litchfield, a lay person, would have recognized those symptoms as warranting an immediate need for more or different medical treatment than what he was already receiving. The mere fact that Litchfield and the other officers did not take steps to ensure Trevor was on his side does not permit an inference of deliberate indifference where there are no facts indicating that at this point Litchfield was even aware of Trevor's sores, the need for Trevor to be on his side, or that failure to place him on his side posed any serious medical risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Second, Plaintiff alleges that Litchfield and a nurse entered Trevor's cell, and Trevor told them that he could not move. Complaint ¶ 133. Litchfield grabbed Trevor's jail uniform and rolled him over to his side so that the nurse could change the dressing on his wounds. The wounds were dark, odorous, and obviously infected. Complaint ¶ 134. Plaintiff further alleges that Litchfield and the ACJ nurse took no steps to facilitate emergency care. Complaint ¶ 19. Litchfield's observations of the infected wounds during this interaction are insufficient to state an actionable Eighth Amendment violation given the fact that the ACJ nurse was specifically present to address the wounds. Because Litchfield was not providing the medical care himself, he must have either directed or been aware that the medical treatment being provided was inadequate and that it posed a grave risk of impending harm. *See Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016). Here, the ACJ nurse was providing medical care to Trevor during this encounter. It is a step too far to infer that Litchfield, a lay person, should have known

10

that the nurse's treatment was constitutionally inadequate. *See Ruiz-Rosa v. Rullán*, 485 F.3d 150, 156 (1st Cir. 2007) ("[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation."). There is no allegation during Litchfield's interaction that there was a complete absence of medical care for Trevor. *Layne v. Vinzant*, 657 F.2d 468, 474 (1st Cir. 1981) (If a prisoner has received some medical attention and the dispute is over its adequacy, "federal courts are generally reluctant to second guess medical judgments."); *Massey v. Rufo*, No. 92-1380, 1994 WL 12326 at *1, 1994 U.S. App. LEXIS 6202 at *3 (1st Cir. Jan. 14, 1994) (per curiam) (unpublished table decision) (quoting *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987)) ("Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [a court] will not second guess the doctors."). There are insufficient facts that would permit an inference that Litchfield should have known that Trevor needed different or additional medical care given his reliance on the trained health care professional who was treating him. See *Snell v. Neville*, 998 F.3d 474, 498 (1st Cir. 2021) (correctional officers "had no reason to expect [prisoner] needed [medical assistance] given their justifiable reliance on the medical opinions of Dr. Ruze and other health care professionals who treated [him]." ).

    **B.  John Clevenger**

The allegations against Clevenger are even more sparse. Besides the caption and identifying him as a party, the only other factual allegations are a general assertion that Clevenger, along with all the other named individuals, were supposed to monitor Trevor continuously, Complaint ¶ 40, and one minor interaction with Trevor. The one interaction that Clevenger had with Trevor was on November 17 when he and a John Doe CO entered Trevor's

cell with an ACJ nurse for a medication pass. Complaint ¶ 136. Plaintiff alleges that they watched Trevor, who was unable to sit up, attempt to pour Gatorade in his mouth while lying on his back and observed that he could not take his medication without assistance. *Id.* That one minimal interaction between Clevenger and Trevor is insufficient to state actionable conduct on the part of Clevenger in violation of the Eighth Amendment. There are no allegations that Clevenger was aware of any of Trevor's prior medical history or medical concerns, and in fact, the Complaint explicitly alleges that Trevor's prior complaints, including about chest and upper back pain were *not* entered into his medical record so no one who provided care to him after November 13 was aware of those complaints. Complaint ¶¶ 83-87. Clevenger's observations of Trevor during a singular interaction do not permit an inference that Clevenger, a lay person, would both easily recognize the necessity for a doctor's attention and that Clevenger's failure to provide that treatment to Trevor was purposeful.

 For the same reasons discussed above with respect to Litchfield, Clevenger was also entitled to rely on the health professional's expertise to medically assess Trevor. *See Snell*, 998 F.3d at 498. When Clevenger entered Trevor's cell, he was with an ACJ nurse while she was providing medication to Trevor. It is not reasonable to infer deliberate indifference on the part of Clevenger based on that interaction when Trevor was in fact receiving medical care. *Estelle*, 429 U.S. at 105-106 ("[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute" a constitutional violation.) Clevenger was present while medical care was being provided and there are insufficient facts to infer that Clevenger both should have known that the medical care – the medication he was receiving – was constitutionally inadequate and that Clevenger deliberately failed to provide additional care. This is not a situation where someone is bleeding profusely or choking, rendering the need for

medical care obvious, nor is this a situation where medical care was denied by the jail officials.[1] In fact, the allegations are quite the opposite—according to the complaint, the patient was seen by ACJ medical staff on November 4 (Complaint ¶¶ 78-79); November 6 (Complaint ¶ 80); November 11 (Complaint ¶ 81); November 13 (Complaint ¶¶ 83); November 14 (Complaint ¶¶ 92); November 15 (Complaint ¶ 103); November 16 (Complaint ¶ 115); November 17 (Complaint ¶¶ 127, 133, 136); and November 18 (Complaint ¶ 138). Thus, this is clearly not a case of a denial of medical assistance, but rather a claim regarding the quality of the care rendered, and there is no allegation that would allow the reasonable inference that Clevenger or Litchfield were aware that the care being rendered was inadequate.

In summary, Clevenger and Litchfield's minimal interactions with Trevor do not allow an inference of deliberate indifference. As set forth in the Complaint, it was CPS and the ACJ medical staff who were responsible for Trevor's medical treatment, Complaint ¶¶ 44-46. Courts have held that correctional officers, like Clevenger and Litchfield who are not trained medical professionals, can reasonably rely on medical staff to medically assess the prisoner. *See, e.g. Martel for Estate of Martel v. Hillsborough County*, 2022 WL 11216469, at *8 (D. N.H. 2022) (dismissing a claim

---

[1] The standards for alleging constitutionally inadequate medical care are demanding. *See* Martel, 0222 WL 11216469 at *1 ("In a lawsuit stemming from an unfortunate inmate death at the Valley Street Jail, the defendants ask the court to test the allegations in the complaint against the demanding standards for constitutionally inadequate medical care . . . .") In *Estelle*, 429 U.S. at 105 n.11, the Supreme Court cited seven cases of examples of deliberate indifference in the context of a correctional officer, all of which involved complete denial of access to medical care for known conditions: *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. (1976)(where jail officials knew a patient had a bleeding ulcer and denied him medical treatment and ignored his repeated requests for medical assistance); *Thomas v. Pate*, 493 F.2d 151 (7th Cir. 1974)(where an inmate was provided penicillin despite knowledge of his allergy to the medication, and he was denied treatment for his allergic reactions); *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972)(where, after a car accident, a plaintiff was incarcerated and reported leg pain and numbness, and after his multiple requests for medical attention were refused, he was released and diagnosed with a stroke with resultant brain damage from denial of treatment); *Hutchens v. Alabama*, 466 F.2d 507 (5th Cir. 1972)(noting that allegations of daily lack of medical attention and medication for a prisoner with terminal cancer would be sufficient to survive a motion to dismiss); *Riley v. Rhay*, 407 F.2d 496 (9th Cir. 1969)(noting that it was inappropriate to dismiss a complaint alleging complete failure to provide medical treatment to a patient with a form of tuberculosis); *Edwards v. Duncan*, 355 F.2d 993 (4th Cir. 1966)(noting it was inappropriate to dismiss a claim alleging that officers refused to allow a patient to receive treatment for a known heart condition); *Hughes v. Noble*, 295 F.2d 495 (5th Cir. 1961)(reversing dismissal of complaint alleging denial of medical care to an inmate who was jailed with significant neck injuries after a car accident).

against a correctional officer where prison nursing staff was also assessing the patient, and noting that "[b]ecause Officer Mutungi is not a medical provider, he was not in a position to medically assess Martel and could rely on the jail's medical staff to make such assessments."); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (affirming dismissal of claim against non-medical correctional officer, noting that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This flows naturally from the division of labor within a prison.").[2] The allegations that Litchfield and Clevenger observed Trevor exhibiting signs of weakness, not being able to sit up or take his medication unassisted is insufficient to permit an inference of deliberate indifference on their part. *Matthews v. Pennsylvania Dept. of Corrections*, 613 Fed.Appx. 163, 170-71 (3d Cir. 2015) (affirming dismissal of Eighth Amendment claims against jail correctional officers where prisoner was being provided allegedly negligent care by jail medical staff, and noting that "[a]lthough corrections officers were aware of Matthews's difficulty descending from his top bunk, using the stairs, and moving about on crutches, they were also justified in trusting that the medical professionals who regularly treated Matthews would recommend a bunk or cell reassignment if he needed one."); *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) ("We have long recognized that the division of labor within a prison necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment.").

Plaintiff has not stated facts against Litchfield and Clevenger that would permit an inference that they were deliberately indifferent to a serious or obvious medical need of Trevor.

---

[2] Of note, the Court in *Spruill*, 372 F.3d at 236, noted that allowing what amounts to a vicarious liability claim against a correctional officer for the care provided by medical staff would promote a "perverse incentive" not to delegate such treatment to the health care provider out of concern for vicarious liability.

Accordingly, Plaintiff has failed to state an actionable Eighth Amendment claim against these Defendants and they are entitled to dismissal.

### III. Litchfield and Clevenger are Entitled to Qualified Immunity.

The "basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery," and immunity is therefore "to be resolved at the earliest possible stage in litigation." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (alterations omitted). Qualified immunity is a two-prong analysis, which may be addressed in any order and asks: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011) (quoting *Maldonado,* 568 F.3d at 269). Whether a right was "clearly established" is "further divided into two parts: (1) the clarity of the law at the time of the alleged civil rights violation, and (2) whether, given the facts of the particular case, a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights." *Id.* at 81 (quotations and citations omitted). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Maldonado*, 568 F.3d at 269 (determining that public official was entitled to qualified immunity on a motion to dismiss).

For the reasons discussed above, none of Plaintiff's factual allegations assert any conduct by Litchfield and Clevenger that implicates a violation of the Eighth Amendment – let alone a clearly established right. Accordingly, they are entitled to qualified immunity.

While it is clearly established that jail officials cannot be deliberately indifferent to the serious medical needs of prisoners, that general proposition of law is insufficient to put a

15

reasonable officer in Litchfield and Clevenger's shoes on notice that their conduct, as alleged in the Complaint, violated the Eighth Amendment under the particular circumstances they confronted.

Plaintiff has alleged that Litchfield and Clevenger observed Trevor's deteriorating condition. However, the symptoms they observed were that Trevor was weak, could not sit up, could not take his medication unassisted, and as to Litchfield, two sores on his back. These symptoms would not obviously alert *every* reasonable official in their shoes that Trevor required additional or different medical care, such that if he did not receive that care, it would lead to impending harm. Courts have concluded as much even when officials observe far more concerning symptoms or conditions. For example, in *King v. Kramer*, 680 F.3d 1013 (3rd Cir. 2012), plaintiff was having seizures due to withdrawal from anxiety medications, but the nursing staff were accusing him of faking his condition. *Id.* at 1016-17. Even though the corrections officers witnessed the seizures, the Seventh Circuit still held that notifying nursing staff and monitoring him while waiting for nursing staff was sufficient because they were "entitled to defer to the judgment of jail health professionals so long as they did not ignore the prisoner." *King*, 680 F.3d at 1018. The court further stated, the corrections officers "were not trained to assess whether an inmate is genuinely experiencing seizures, and so they lacked the capacity to judge whether [the medical provider] made an inappropriate diagnosis." *Id.*[3] *See also Daggett v. York Cnty.*, No. 2:18-CV-00303-JAW, 2021 WL 868713, at *36 (D. Me. Mar. 8, 2021), *aff'd*, No. 21-1374, 2022 WL 216565 (1st Cir. Jan. 25, 2022) (rejecting Eighth Amendment claim where there was no evidence

---

[3] As recognized by the Seventh Circuit, "[i]mportantly, *King* was decided at step one of the qualified-immunity inquiry. In other words, it affirmatively established that a corrections officer may trust jail medical professionals to provide inmates with appropriate medical care." *McGee v. Parasno*, 55 F.4th 563, 573 (7th Cir. 2022).

suggesting that the jail medical staff were subjectively aware of the consequences an incorrect dosage of medication might have on an inmate with Parkinson's Disease).

In addition, as discussed in detail above, courts including the First Circuit have consistently held that correctional officers are not deliberately indifferent when they justifiably rely on the medical opinions of, or care provided by health care professionals. *See, e.g. Snell*, 998 F.3d at 497-98. If anything, based on the case law, it was reasonable for Litchfield and Clevenger to conclude that they could rely on the ACJ nurses' assessment and treatment of Trevor. And even if they were mistaken in relying on the ACJ medical staff's decisions as to care, that mistake was reasonable and there was no "controlling authority or a consensus of persuasive authority sufficient" to have put them on notice that their alleged conduct was unlawful. *Est. of Rahim by Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022) (explaining that qualified immunity affords officials "breathing room" even when they make reasonable mistakes.); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (internal quotation and citation omitted)).

Here, when Litchfield and Clevenger interacted with Trevor, there was also an ACJ nurse present who was providing him with care – wound changes or medication. According to the Complaint, Trevor was seen at least 11 times by jail medical staff, including every day between November 13 and November 18. Even accepting that Trevor was obviously sick and deteriorating at those points in time, "recognizing that someone is sick is not the same as knowing that he is receiving inadequate care from a trained medical professional." *See McGee*, 55 F.4th at 575. It is unreasonable to conclude that Litchfield should have known that a nurse changing the dressing on Trevor's wounds amounted to constitutionally inadequate care. Similarly, it is unreasonable to

17

infer that Clevenger should have known that the nurse providing Trevor with medication would amount to an Eighth Amendment violation for inadequate medical care.

There are no allegations that the ACJ medical staff members communicated to Litchfield and Clevenger that they recommended that Trevor be seen outside the jail and that request was denied. There are no allegations that the ACJ medical staff communicated his reported symptoms, or their suspicion that Trevor potentially had rhabdomyolysis or the consequences if left untreated. In fact, the allegation is that Nurse Riebe refused to send Trevor outside the jail for medical care and the physician assistant did not take any steps to provide Trevor with emergency care. Complaint ¶¶ 95, 105-06. If the other ACJ nursing staff present for Litchfield and Clevenger's interactions with Trevor did not take steps to provide him with different or additional care, it is unreasonable to infer that Litchfield and Clevenger, who are not trained medical professionals, should have. It is also unreasonable to infer that Litchfield and Clevenger would have known that Trevor was potentially suffering from rhabdomyolysis or pneumonia based on their own observations. This is not the type of situation where it would have been obvious to a lay person without knowledge of his symptoms or medical history that he needed emergency medical care. There are no allegations that Litchfield and Clevenger knew about his complaints of chest pain, and even if they did, it is unclear how they as non-medical staff are supposed to understand that the care being provided was inadequate for Trevor's condition and would ultimately lead to lobar pneumonia if left untreated. Not every reasonable officer in Litchfield and Clevenger's shoes, knowing what they knew, would have known that their own actions would amount to a violation of the Eighth Amendment for inadequate medical care. As a result, they are entitled to qualified immunity and the claims against them should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Litchfield and Clevenger respectfully request that this Court dismiss Plaintiff's Complaint as to them with prejudice for failure to state a claim upon which relief can be granted.

Dated at Portland, Maine this 22nd day of September 2025.

                                           */s/ Kasia S. Park*
                                           Kasia S. Park, Esq.
                                           Robert P. Hayes, Esq.
                                           *Attorney for Defendant Bryan Litchfield and John Clevenger*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME
(207) 772-1941
kpark@dwmlaw.com