UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAMELA ASHBY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF TREVOR SAUNDERS,<br>    Plaintiff,<br><br>v.<br><br>ANDROSCOGGIN COUNTY, ERIC SAMSON, JEFFREY CHUTE, LANE FELDMAN, WILLIAM GAGNE, TAMMY CHASE, JOHN CLEVENGER, PAUL HAMANN, MIRANDA KOLOGENSKI, JAMES LANGELIER, VICTORIA LANGELIER, JERRY LAROCQUE, REBECCA LEDUC, BRYAN LITCHFIELD, REGINALD LITTLEFIELD, ISAAC POLIQUIN, JANE DOE(S), AND JOHN DOE(S),<br>    Defendants. | CIVIL ACTION<br><br>DOCKET NO.: 2:25-CV-00299-LEW |

**PLAINTIFF'S OBJECTION TO DEFENDANTS JOHN CLEVENGER AND BRYAN LITCHFIELD'S MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Pamela Ashby ("Plaintiff" or "Pam"), by and through undersigned attorneys and pursuant to Federal Rules of Civil Procedure 8 and 12, respectfully requests that this Court deny the motion ("Motion" or "Mot.") [Dkt. Doc. No. 25] submitted by Defendants John Clevenger ("Officer Clevenger") and Bryan Litchfield ("Officer Litchfield," and together with Officer Clevenger, "Defendants") to dismiss the complaint ("Complaint" or "Compl.") [Dkt. Doc. No. 1] filed against them in the above-captioned matter.  Defendants' motion is premised on the contention that Plaintiff has failed to state a claim upon which relief can be granted. For the reasons set forth in the objection ("Objection") below, that argument lacks merit.

# INTRODUCTION

This action concerns the cruel and unusual punishment of Plaintiff's son, Trevor Saunders ("Trevor"), while he was incarcerated at the Androscoggin County Jail ("ACJ"). On October 25, 2023, Trevor reported to ACJ to serve a 45-day sentence. Compl. at ¶ 4. Twenty-four days into his sentence, on November 18, 2023, Trevor died of complications of infected bed sores. *Id*. at ¶¶ 151, 154-55.

While in the custody of ACJ, Trevor was under the constant surveillance of ACJ's corrections officers, all of whom are defendants in the above-captioned matter (each individually an "ACJ Defendant" and collectively the "ACJ Defendants"). *Id*. at ¶ 40. This included, at times, audio and video surveillance. *Id.* at ¶ 99. Two of the ACJ Defendants surveilling Trevor were Officers Clevenger and Litchfield. *Id*. at ¶ 40.

Upon his arrival at ACJ, Trevor reported to the ACJ Defendants that he had a history of a spinal cord stroke and had resultant weakness and limited mobility on his left side. *Id*. at ¶ 61. On or before November 1, Trevor began developing pressure ulcers on his lower back and buttocks. *Id*. at ¶ 72. Trevor's medical care was managed by the ACJ medical department. *Id.* at ¶ 42. ACJ Defendants escorted Trevor to each of his medical appointments (or, when he became too ill to leave his cell for medical care, escorted a medical department staff member to Trevor's cell to see him there), and were regularly physically present in the exam room or cell for these visits. *Id*. at ¶¶ 69-71. Jail officials expected the ACJ Defendants—who constantly monitored the inmates, *id.* at ¶40—to identify and report inmates' serious medical needs to the appropriate medical staff at the facility. *Id*. at ¶ 34.

The ACJ Defendants, including Officers Clevenger and Litchfield, had a custom of minimizing, neglecting, or ignoring the serious medical needs of ACJ inmates, including Trevor

2

Saunders. *Id*. at ¶ 35-36. The ACJ Defendants watched passively as Trevor, who was ambulating independently upon his arrival at ACJ, *id.* at ¶ 58, lost his ability to walk—first, without assistance, and then altogether. *Id*. at ¶ 90, 109, 111, 113. For the last three-to-four days of his life, ACJ Defendants checked on a bed-bound Trevor every fifteen minutes. *Id*. at ¶ 100, 110. During these checks, ACJ Defendants—including Officers Clevenger and Litchfield—repeatedly observed Trevor lying flat on his back. *Id*. at ¶¶ 111, 114, 122, 132, 133, 136, 139. The ACJ Defendants knew that Trevor's open wounds made it dangerous and painful for him to lay on his back in his cell, and that he was too weak to sit up, move, or reposition himself. *Id*. at ¶¶ 112-13. They knew that he was too weak to urinate anywhere but on himself, and looked on, without taking any action, as he repeatedly did so. *Id*. at ¶ 125.

It was apparent to the ACJ Defendants that Trevor was extremely ill and required emergency medical treatment, above and beyond the care he was receiving from the ACJ medical department. *Id*. at ¶ 130. He had been under the care of the ACJ medical department for several weeks, all the while getting sicker and sicker. *See generally id.* Nonetheless, it was business as usual for the ACJ Defendants: they continued their regular surveillance rounds (and in doing so, observed Trevor's precipitous decline), taking no steps to get him the emergency medical care he obviously needed. *Id*. at ¶¶ 90-91, 114, 124, 126, 130, 135, 147.

Officers Clevenger and Litchfield had multiple opportunities to help Trevor as he lay dying in his cell. *Id*. at ¶¶ 118, 133, 136. At present, Plaintiff has conducted no discovery and is in possession of only limited video surveillance from November 17 and 18—the last two days of Trevor's incarceration, and of his life.  As such, Plaintiff is currently aware of three incidents of Officers Clevenger and Litchfield's deliberate indifference to Trevor's serious medical needs.

3

Officer Litchfield was part of a group of ACJ Defendants who transported Trevor by wheelchair into an audio- and video-monitored observation cell on November 17. *Id*. at ¶ 118. Officer Litchfield and another ACJ Defendant lifted Trevor from his wheelchair and positioned him on his side on the bed slab. *Id*. at ¶ 121. By the time Officer Litchfield left the cell, Trevor was lying on his back, as he was physically unable to remain on his side. *Id*. at ¶ 122. Officer Litchfield knew that it was not only painful, but also dangerous, for Trevor to lay on his back, and that Trevor was too weak to reposition himself; nonetheless, he did nothing about it. *Id*. at ¶¶ 112-13, 123.

Later on November 17, Officer Litchfield escorted a nurse to Trevor's cell for wound care. *Id*. at ¶ 133. Trevor was still lying on his back, and urine had visibly pooled on the ground next to him. *Id*. at ¶ 132. Trevor told Officer Litchfield that he could not move. *Id*. at ¶ 133. Officer Litchfield grabbed Trevor's jail uniform and rolled him onto his side so that a nurse could change the dressing on his wounds. *Id*. The wounds were dark, odorous, and obviously infected. *Id*. at ¶ 134. Despite the unmistakable nature of Trevor's declining health and the obvious need for advanced medical care, Officer Litchfield took no action to facilitate such care. *Id*. at ¶ 135.

Later still on November 17, Officer Clevenger arrived at Trevor's cell. *Id*. at ¶ 136. Trevor was laying on his back. *Id*. Officer Clevenger knew that it was dangerous and painful for Trevor to lay on his back, and that he was too weak to reposition himself. *Id*. at ¶¶ 112-13. Trevor could not sit up to take the oral medication that a nurse gave him. *Id*. at ¶ 136. Officer Clevenger watched as Trevor attempted to pour a drink into his mouth so that he could swallow the pill. *Id*. Trevor was unable to take the pill without assistance. *Id*. Officer Clevenger, another ACJ Defendant, and an ACJ nurse propped up Trevor so that he could take his medication

4

without choking on it. Then they left the cell, doing nothing more to assist him. *Id*.

Trevor died the next day. *Id*. at ¶ 151. He was 25 years old. *Id*. at ¶ 1.

## ARGUMENT

Defendants Clevenger and Litchfield move to dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b), arguing that "the allegations against Litchfield and Clevenger amount to an assertion that the care provided by the nursing staff was inadequate, not absent" and that "[s]uch allegations are insufficient as a matter of law." Mot. at 1, 9. In the alternative, they argue that their deliberate indifference to Trevor's serious medical need is protected by the doctrine of qualified immunity. *Id.* at 2, 15. Both arguments are without merit.

### I. Plaintiff Properly States a Claim Against Defendants.

A corrections officer violates an inmate's constitutional right to be free from cruel and unusual punishment under the Eighth Amendment when he or she is deliberately indifferent to the inmate's serious medical needs. *Abernathy v. Anderson*, 984 F.3d 1, 6 (1st Cir. 2020). To succeed on a deliberate indifference claim under 42 U.S.C. § 1983, a plaintiff must ultimately prove (and at this stage, must properly plead): (1) that the inmate had an objectively serious medical need that received inadequate care; and (2) that the defendant exhibited deliberate indifference toward that need. *Id*. Here, Defendants acknowledge that Trevor's medical need was objectively serious; the first prong of the test is therefore met. Mot. at 7-9. Defendants argue that Plaintiff does not meet the second prong. *Id*.

Plaintiff properly pleads Officers Clevenger and Litchfield's deliberate indifference to Trevor's serious medical needs. Defendants' claim to the contrary is premised on two flaws in their analysis. First, Defendants wrongly suggest that the Complaint's allegations against the ACJ Defendants as a group cannot be imputed to them as individuals. Second, Defendants were

not, as they suggest, relieved of their duty to ensure Trevor received adequate medical treatment purely because he was under the care of ACJ medical staff. The validity of Plaintiff's Complaint is discussed first; the flaws in Defendants' reasoning are addressed thereafter.

### a. The Complaint Properly Pleads Officers Clevenger and Litchfield's Deliberate Indifference to Trevor's Serious Medical Needs.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The Court's determination whether the facts alleged in a complaint are sufficient to state a plausible claim against a particular defendant is "context-specific." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). "Because precise knowledge of the chain of events leading to the constitutional violation may often be unavailable to a plaintiff at this early stage of the litigation," the Court must "take to heart the Supreme Court's call to draw on our judicial experience and common sense as we make a contextual judgment about the sufficiency of the pleadings." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011) (internal quotation marks omitted).

Where a plaintiff claims that a corrections officer violated an inmate's right to be free from cruel and unusual punishment, she will survive a motion to dismiss by sufficiently pleading facts that show the corrections officer plausibly acted with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) An officer acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The First Circuit has described the concept of deliberate indifference as a type of willful blindness: "a form of scienter in which the official

6

culpably ignores or turns away from what is otherwise apparent." *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 82 (1st Cir. 2005). In the context of the unconstitutional deprivation of medical care, deliberate indifference may be shown through "decisions about medical care made recklessly with actual knowledge of impending harm, easily preventable." *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011) (internal quotation marks and citation omitted).

As noted in a recent opinion by the United States District Court for the District of Rhode Island, whether a corrections officer acts with deliberate indifference in the context of the deprivation of medical care requires an assessment of both the officer's acts or omissions, as well as the officer's understanding of the appropriateness of the medical care and the risk of harm to the inmate absent intervention:

> For a defendant who has not provided direct medical treatment, the Prong Two inquiry must examine whether he/she directed or *otherwise had knowledge of allegedly inadequate care provided by others*. That is, liability must be premised on the named defendant's *own acts or omissions despite actual or constructive knowledge of the grave risk of harm*, evincing reckless or callous indifference to the prisoner's constitutional rights.

*Garcia v. Terrico*, 2024 U.S. Dist. LEXIS 49133, * 16 (D.R.I. Mar. 20, 2024) (internal citation omitted) (emphasis added). A corrections officer's knowledge of a substantial risk is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted).

The Complaint sufficiently pleads that Defendants knew of—and, in fact, had a front-row seat to—the inadequate medical care being provided to Trevor and knew that he was at grave risk of imminent harm, but they did nothing. The care Trevor *did* receive was so patently and woefully inadequate that any reasonable layperson would recognize it as such. Thus, as

examined more fully in section I(c), *infra*, Defendants' attempts to insulate themselves from their constitutional transgressions by pointing to the presence of treating providers are unpersuasive.

The Court can and should consider the allegations against ACJ Defendants collectively to be allegations against Officers Clevenger and Litchfield individually. *See* Section I(b) *infra*. Therefore, at this stage, the Court should accept as true that Defendants were aware of Trevor's medical history, *compare* Compl. at ¶ 61 *with* Mot. at 9, 12; knew Trevor was not supposed to lay on his back, *compare* Compl. at ¶ 112 *with* Mot. at 9; and appreciated the grave risk of Trevor remaining supine, *compare* Compl. at ¶ 112 with Mot. at 9. Further, Defendants knew that Trevor was, for all intents and purposes, bedbound beginning November 13, Compl. at ¶ 89; that Trevor spent his last several days writhing in pain and moaning for help, *id*. at ¶ 90; that Trevor's block mates—also laypersons—reported that he needed more medical attention than he was receiving, *id*. at ¶ 91; and that Trevor was too weak to care for his own wounds, *id*. at ¶ 113.

Defendants focus on the specific allegations wherein Defendants Litchfield and Clevenger are explicitly named, arguing that they "are too 'meager, vague, and conclusory' to state an actionable Eighth Amendment claim." Mot. at 8 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). At this stage of litigation, the law does not, and cannot, expect Plaintiff to enumerate each occasion on which each guard saw Trevor. But even assuming the specific instances in the Complaint are the only ones in which Defendants Litchfield and Clevenger observed Trevor, those instances—and their responses to them—evinced deliberate indifference.

On November 17, when Officer Litchfield moved Trevor from maximum to observation, he was presented with a weak, semi-conscious, non-ambulatory young man who could only make it to his jail bed slab by being lifted from the wheelchair by his elbows and placed on the

8

mattress with the help of two corrections officers. Compl. at ¶¶ 118-21. Later that day, he observed that Trevor was too weak even to roll onto his side to have his dressings changed. *Id*. at ¶ 133. He observed Trevor's wounds, which were dark, odorous, and infected. *Id*. at ¶ 134. Likewise, irrespective of his other interactions with Trevor, on November 17, Officer Clevenger was presented with a bed-bound young man who was too weak to sit up, lift a drink to his mouth, or take medication independently. *Id*. at ¶ 136. From those encounters alone, it should have been—and for the purposes of Defendants' motion to dismiss, was—obvious to Officers Clevenger and Litchfield that Trevor was extraordinarily infirm and that he lacked the ability to take the actions requisite to protect himself. Defendants should not have needed to see more to be alarmed; their failure to take action at that point constituted deliberate indifference.

In any event, in deciding the motion to dismiss, the Court must make all reasonable inferences in Plaintiff's favor. *E.g. Ocasio-Hernandez*, 640 F.3d at 15. The Court is well within its discretion to infer, employing its judicial experience and common sense, that Defendants had full shifts on *at least* November 17 (but, as they were ACJ employees, likely worked other days during Trevor's incarceration as well), and were part of the team that rounded on Trevor every 15 minutes on that day, observing but doing nothing about his steady decline. Compl. at ¶¶ 100, 110, 131.

As to Officer Litchfield, the Court can and should infer that he—a corrections officer with a general duty to be aware of the goings-on within ACJ—knew that Trevor had injured his head in his cell in maximum, which is why Officer Litchfield was helping move him to observation on November 17. *Id*. at ¶ 118. The Court can and should infer that he placed Trevor on his side in the observation cell because he knew Trevor was not supposed to lay on his back. *Id*. at ¶ 121. The Court can and should infer that Trevor's wounds (the wounds from which he

9

died the next day, *id.* at ¶ 155) were so miscolored, so filthy, so odorous, and so clearly infected that, in failing to act in any way, Officer Litchfield was plausibly willfully blind to Trevor's needs, and the harm that awaited him absent treatment. *Leavitt*, 645 F.3d at 497.

As to Officer Clevenger, the Court can and should infer that he (also a corrections officer with a duty to be aware of the activity at ACJ) knew that Trevor was being held in observation because he was very ill with infected bed sores. Compl. at ¶¶ 116-18. The Court may also infer that Officer Clevenger noticed the urine pooling in Trevor's cell, *id.* at ¶ 132, and that it would be obvious to any layperson that laying on one's back in one's own urine is not good for infected bed sores. The Court may further infer that, by witnessing Trevor's inability to lift a drink to his mouth, *id.* at ¶ 136, Officer Clevenger knew he would be unable to alleviate the pressure (and likelihood of worsening infection) from his back. Officer Clevenger, too, was therefore plausibly willfully blind to Trevor's needs, and the harm that awaited him absent treatment. *Leavitt*, 645 F.3d at 497.

      **b. The Group Allegations Against the ACJ Defendants are Properly Attributed to Officers Clevenger and Litchfield Individually.**

Defendants' argument that Plaintiff's Complaint fails to state a claim is premised largely on their assertion that the Court cannot impute any of the allegations against the ACJ Defendants collectively to them as individuals. Mot. at 6-7. Defendants state that "it is improper to rely on blanket allegations against all defendants[,]" *id*. at 7, and the Court must therefore refrain from inferring that Officers Clevenger and Litchfield had the knowledge or took part in the activities described in the group allegations. This is not so.

So-called "group pleadings," such as those alleged against the ACJ Defendants in the Complaint, are acceptable under Federal Rule of Civil Procedure 8. *See Cota v. United States*

*Bank Nat'l Ass'n*, 2016 U.S. Dist. LEXIS 31171, *15 (D. Me. Mar. 10, 2016) (rejecting the argument that pleadings must "delineate the particular allegedly wrongful acts of each Defendant" (citing *Sanchez*, 590 F.3d at 48)); *see also Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014) (noting that "group pleadings are not, prima facie, excluded by Rule 8(a)"). Stated differently, group pleadings provide a basis for the survival of a motion to dismiss where "it is plausible that each Defendant engaged in the actions attributed [collectively] to 'Defendants' in the Complaint." *Cota*, 2016 U.S. Dist. LEXIS 31171, *16. By contrast, dismissal of individual defendants based on group pleadings is appropriate only "where it is entirely implausible or impossible for the grouped defendants to have acted as alleged." *Zond*, 990 F. Supp. 2d at 53 (collecting cases) (internal quotation marks omitted); *see also Ramhit v. Luu*, 2025 U.S. Dist. LEXIS 176013, *4 (D. Mass. Sept. 9, 2025) (rejecting dismissal of claims, including claims brought under 42 U.S.C. § 1983, based on motion attempting to discount "allegations against [state actors that] are 'lumped together' without distinction [by actor]").

The cases relied upon by Defendants to distance themselves from Plaintiff's "group pleadings" are either inapposite or undercut their position. In *Hernandez v. Castillo*, the District Court dismissed the claims against the defendants because the allegations did not "allow for the inference that Laboy or any of the other named defendants were *personally involved* in the deprivations of Plaintiff's constitutional rights." *Hernandez v. Castillo*, 2010 U.S. Dist. LEXIS 87347, *34 (D.P.R. Aug. 24, 2010) (emphasis added). Given the lack of the defendants' personal involvement, Mr. Hernandez's claims as alleged failed to rise above the "sheer possibility that [each] defendant … acted unlawfully." *Id*. at *27 (quoting *Iqbal*, 556 U.S. at 678).[1]

---

[1] *Hernandez v. Castillo* is further distinguishable because there, plaintiff's § 1983 claims were based on supervisory liability. *Id*.

Defendants also rely on *Ocasio-Hernandez v. Fortuno-Burset*, quoting it for the proposition that a court "must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." 640 F.3d at 16; *see also* Mot. at 7. In reality, *Ocasio-Hernandez* undermines Defendants' argument that group pleadings are *per se* conclusory. There, the First Circuit disagreed with the lower court's characterization and dismissal of the allegations regarding defendants' collective actions as "generic, blanket statements" that relied entirely on the defendants' positions of authority. *Ocasio-Hernandez*, 640 F.3d at 14, 16. Rather, the First Circuit found that the plaintiffs' complaint included "other well-pleaded factual allegations that detail[ed] each of [the] defendants' level of personal involvement in and familiarity with" the constitutional violations. *Id.* at 16. The "cumulative effect of the factual allegations"—group pleadings included—gave the court a sufficient basis to overturn the dismissal. *Id.* at 14.

> Moreover, the requirement of plausibility on a motion to dismiss under Rule 12(b)(6) 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct].' *Twombly*, 550 U.S. at 556. The allegations above plausibly show that each defendant possessed knowledge of and shared some responsibility for the [allegedly unconstitutional acts].

*Id.* at 17.

At this early stage of litigation, Plaintiff has very limited access to information regarding the extent of Defendants' interactions with Trevor. The specific factual allegations against Officers Clevenger and Litchfield were made possible only because of Plaintiff's access to a short window of video footage at the very end of Trevor's confinement, a day before his death—video depicting an inmate who could not walk, sit up, hold his head up, eat, drink, take medicine, urinate anywhere but on himself, or otherwise care for his own wounds. *See, e.g.*, Compl. at ¶¶ 98-99, 119, 125, 133, 136-

_____

Here, Officers Clevenger and Litchfield were part of a team of corrections officers responsible for monitoring Trevor while he was at ACJ. Compl. at ¶ 40.[3] Trevor's health had been declining for weeks; the treatment he was receiving was clearly not effective. *Id.* at ¶ 72. The ACJ Defendants escorted Trevor (or medical staff) to every medical appointment. *Id.* at ¶ 69-70. A corrections officer was regularly in the exam room or cell where the medical appointment was taking place. *Id.* at ¶ 71. ACJ Defendants made regular rounds on the cell blocks, *id.* at ¶ 40, during which Trevor and his block mates made repeated pleas for the corrections officers' help. *Id.* at ¶¶ 90-91. In the limited video footage available to Plaintiff, the Defendants show no surprise or urgency in responding to Trevor's clearly compromised state on and after November 17, *id.* at ¶¶ 123-24, 135, 136. In light of the facts known, it is highly plausible that Defendants' interactions with Trevor were far more extensive than is alleged specifically as to them in the Complaint. The constellation of facts alleged, along with the above-cited case law, allow the Court to properly infer that the Complaint's allegations against the ACJ Defendants are plausibly attributable to Officers Clevenger and Litchfield individually.

    c. **Officers Clevenger and Litchfield's Reliance on the Presence of ACJ Medical Staff is Insufficient to Overcome a Charge of Deliberate Indifference.**

Officers Clevenger and Litchfield argue that their behavior was excusable given the presence of medical staff during the interactions described in the Complaint. Mot. at 11-14. But a medical provider's management of an inmate's care does not relieve the corrections officer of his or her constitutional obligations. Where the medical care is so inadequate, or an inmate's medical

---

Trevor during his incarceration.

[3] As alleged in the Complaint, ACJ corrections officers routinely minimized, neglected, or ignored inmates' serious medical needs by, *inter alia*, openly and baselessly accusing inmates of faking their illnesses despite objective evidence to the contrary; failing to identify and report inmates' serious medical needs to appropriate medical personnel; and failing to provide inmates with access to the medical care and equipment they need, internally or externally to ACJ. Compl. at ¶ 34.

condition is so serious, an officer is not justified in relying on the treating medical professionals. *Alsina-Ortiz*, 400 F.3d at 83 (summary judgment vacated as to prison guard); *see also Mulkern v. Cumberland Cnty.*, 2001 U.S. Dist. LEXIS 19582, *73 (D. Me. Nov. 30, 2001). In cases where the corrections officer bears witness to inadequate medical care (and an inmate's suffering therefrom) but does nothing more, the guard's inaction "may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the Amendment." *Estelle*, 429 U.S. at 103 (internal quotation marks and citation omitted).

Defendants cite *Layne v. Vizant*, *Massey v. Rufo*, and *Snell v. Neville* for the proposition that, where an inmate has received some medical attention and the dispute is over its adequacy, corrections officers are *generally* justified in relying on the medical professional's judgment such that they can avoid a charge of deliberate indifference. *Layne v. Vizant*, 657 F.2d 468, 474 (1st Cir. 1981); *see also Massey v. Rufo*, 1994 U.S. App. LEXIS 6202, *3 (1st Cir. Jan. 14, 1994); *Snell v. Neville*, 998 F.3d 474, 498 (1st Cir. 2021).[4] But that rule is general for a reason, and those cases concern circumstances where the care was patently

---

[4] Defendants rely on several other distinguishable cases for the same proposition, including *Martel*, 2022 U.S. Dist. LEXIS 190508, *4-8 (D.N.H. Oct. 19, 2022) (inmate repeatedly refused medical care); *Matthews v. Pa. Dep't of Corr.*, 613 F. Appx. 163, 166 (3rd Cir. 2015) (no evidence in complaint that medical staff "were providing plainly inadequate treatment for Matthews's tendinitis or that the corrections officers were deliberately indifferent in assuming the medical department's recommendations (or lack thereof) were proper"); and *Giles v. Godinez*, 914 F.3d 1040, 1050 (7th Cir. 2019) (plaintiff received regular medical attention from advanced-degree professionals, several of his grievances underwent official review, and there was no evidence from his medical records that he was receiving inadequate care).

[5] *Layne* concerned the conduct of "supervisory officials" rather than officers with "day-to-day contact with the prisoner." *Layne*, 657 F.2d at 472. The Court determined that, because there was nothing in the medical record that could have alerted the supervisory officials to the unreasonableness of the plan of treatment, no reasonable jury could conclude that they were deliberately indifferent. *Id.* at 474. In *Massey*, the record on summary judgment demonstrated that plaintiff received objectively reasonable care; he was "seen the same day as the incident, provided with medication and sent for a consultation to the hospital." *Massey*, 1994 U.S. Dist. LEXIS 6202 at *3. The corrections officers in *Snell*, meanwhile, were justified in their reliance on the care provided by the medical professionals in that case—over the course of the plaintiff's incarceration, they treated his knee pain by giving him x-rays; referring him to orthopedic specialists; providing him with braces, a cane, knee sleeves and anti-embolism stockings, and medication

The facts of *Alsina-Ortiz* are eerily similar to those concerning Trevor. There, the Court—after drawing permissible inferences in favor of the plaintiff—found that the inmate was likely in considerable pain for several weeks; was disabled, half paralyzed, and unable to move independently; and cried and screamed in distress. *Alsina-Ortiz*, 400 F.3d at 79; *compare with* Compl. at ¶¶ 81-82, 90, 113. Discovery revealed that the inmate's fellow prisoners had alerted the defendant-guard of his need for medical care, and that the inmate himself also asked the guard for help. *Alsina-Ortiz*, 400 F.3d at 83; *compare with* Compl. at ¶¶ 90-91. Evidence suggested that the guard "was aware of his plight but did nothing to secure medical care for him." *Alsina-Ortiz*, 400 F.3d at 79; *compare with* Compl. at ¶¶ 90-91, 112-14, 124, 135-36.

The guard in *Alsina-Ortiz* argued, as Defendants do here, that he, "himself not a health care professional, should not be expected to parse symptoms, especially of someone already under medical care." *Id.* at 83. The Court disagreed:

> Reasonable reliance on others and lack of expertise may both be fair points. But if [the guard] Castillo knew of prolonged, manifest, and agonizing pain being suffered by Ocasio and did nothing to advise others, we can hardly say it would be impossible to find deliberate indifference.

*Id.* The same logic applies here.

## II.     Defendants Are Not Entitled to Qualified Immunity.

In the alternative, Defendants ask that their deliberate indifference be excused by the doctrine of qualified immunity. Mot. at 15. Here, too, Defendants' arguments fall short.

To overcome a claim of qualified immunity, a § 1983 plaintiff must show (1) that the facts alleged make out a violation of a constitutional right; and (2) that the right was "clearly established" when the defendant allegedly violated it. *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 32 (1st Cir. 2011). The question of whether Plaintiff has adequately pleaded a violation of a

---

to treat his swelling; and affording him light work status. *Snell*, 998 F.3d at 482.

constitutional right is discussed above; at issue here is whether, assuming such a violation is properly pleaded, the Court should dismiss the claim under the "clearly established" prong.

The question of whether the constitutional violation is "clearly established" is premature given the lack of a factual record before the Court. But if the Court decides to address the qualified immunity argument, it should find that Defendants reasonably understood that their deliberate indifference to Trevor's serious medical needs was a violation of his constitutional rights.

### a. Defendants' Assertion that Qualified Immunity Applies is Premature.

While the "the defense [of qualified immunity] sometimes can be raised and evaluated on a motion to dismiss[,]" *Haley*, 657 F.3d at 47, "[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity[.]" *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010). Indeed, "[w]hen the qualified immunity doctrine is invoked as grounds for a motion to dismiss, it is almost always a procedural mismatch because the court lacks the robust factual record it needs to decide if it is appropriate." *Bowman v. Montiero*, 2025 LEXIS 147091, *12 (D. Mass. July 31, 2025) (internal quotation marks and citations omitted); *see also Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2nd Cir. 2020) (same); *Jakuttis v. Town of Dracut*, 656 F. Supp.3d 303, 319 (D. Mass. Feb. 14, 2023) (explaining that "the court will often lack the robust factual record it needs to decide whether an official is entitled to qualified immunity at [the motion to dismiss] stage") (internal quotation marks and citation omitted); *Stone v. Worcester Cty. Sheriff's Office*, 2019 U.S. Dist. LEXIS 49974, *14 (D. Mass. Mar. 26, 2019) (denying motion to dismiss plaintiff's Eighth Amendment claims for inadequate medical care because court could not "determine, based on the pleadings alone … that a reasonable person would not have been aware of [inmate's] rights. The

16

applicability of a qualified immunity or 'good faith' defense cannot be decided without discovery").[6]

This case is emblematic of the reason courts are reticent to dismiss constitutional claims at the pleadings stage based on a qualified immunity defense. The parties have conducted no discovery. Absent discovery, there is simply no way to determine the precise contours of Defendants Clevenger and Litchfield's constitutional violation, and thus, by extension, whether their constitutional violation was well established.

### b. Plaintiff Has Pleaded Sufficient Facts to Allow for the Inference that Officers Clevenger and Litchfield Violated "Clearly Established" Constitutional Law.

The deliberate indifference allegedly exhibited by Officers Clevenger and Litchfield constituted a "clearly established" violation of Trevor's constitutional rights. "For the purposes of qualified immunity, a right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Cintron v. Bibeault*, 2025 U.S. App. LEXIS 19640, *25 (1st Cir. Aug. 5, 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with 'materially similar' facts." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) In other words, as the First Circuit recently reiterated, "even

---

[6] Tellingly, all of the cases Defendants cite in support of their assertion of qualified immunity were decided at the summary judgment stage. *See King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012) (ruling on motion for summary judgment); *Daggett v. York Cty.*, 2021 U.S. Dist. LEXIS 42845 (D. Me. March 8, 2021) (same); *McGee v. Parsano*, 55 F.4th 563 (7th Cir. 2022) (same). Each decision details, and has the benefit of, a robust and well-developed set of facts upon which the court could base its qualified immunity determination. *See, e.g., Daggett*, 2021 U.S. Dist. LEXIS 48245 at *6-36 (detailing relevant facts as stated in multiple parties' statements of material facts); *see also id.* at *142 ("it is not clear that every reasonable law enforcement officer would have known, *on these facts*, that Officer Poore's conduct violated Mr. Daggett's right to medical care") (emphasis added).

17

without such similarity, we may find evidence that the state of the law in [the year of the constitutional violation] gave [defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Cintron*, 2025 U.S. App. LEXIS 19640 at *26 (quoting *Hope*, 536 U.S. at 741).

The Complaint alleges that Officer Litchfield observed wounds that were "dark, odorous, and obviously infected[,]" and that "[i]t was obvious to Corrections Officer Litchfield … that [Trevor's] health was declining rapidly and he needed emergency medical care." Compl. at ¶¶ 134-35. Likewise, the Complaint alleges that the direness of Trevor's medical condition was apparent to Officers Clevenger, Litchfield and all ACJ Defendants—none of whom is alleged to have a medical background—and that they all had actual knowledge that Trevor's condition presented an imminent risk to his life. *Id.* at ¶¶ 164-65. Plainly, Officers Clevenger and Litchfield were on notice that allowing Trevor to suffer, without appropriate emergency medical attention, in the face of a deadly medical condition, was a violation of Trevor's Eighth Amendment rights. *See Avery v. Wellpath, LLC*, No. 2:20-CV-428-DBH, 2021 U.S. Dist. LEXIS 97834, at *5 (D. Me. May 24, 2021) (denying motion to dismiss, on qualified immunity grounds, claim that an officer understood that an inmate was seriously ill and needed medical assistance, noting that "[t]he law is well-established on the standards for a deliberate indifference claim, and there is nothing in this Complaint to suggest that these corrections officers allegedly abridged a right that was somehow not 'clearly established.'" (quoting *Gray v. Cummings*, 917 F.3d 1, 10 (1st Cir. 2019)); *see also Dantone v. Bhaddi*, 570 F. Supp. 2d 167, 173 (D. Mass. 2008) ("It has long been established that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Thus, there is no question that Dr. Bhaddi would have been on notice that a prison doctor's

deliberate indifference to a prisoner's serious medical needs constitutes a violation of the prisoner's constitutional rights." (internal quotation marks and citations omitted)). In fact, as is set forth in section I(b), *supra*, the First Circuit's decision in *Alsina-Ortiz v. Laboy* sets out facts that are materially similar to the facts here.

Defendants argue that "even if they were mistaken in relying on the ACJ medical staff's decisions as to care, that mistake was reasonable" and is therefore entitled to qualified immunity. Mot. at 17. In support of this argument, Defendants once again rely heavily on the presence of medical staff to defend the reasonableness of their conduct, pointing to cases where officers lacked the training and education to determine whether inmates needed urgent medical care. *Id.* at 16-18. *See, e.g.*, *Daggett*, 2021 U.S. Dist. LEXIS 42845, *138-43 (no deliberate indifference, or in the alternative qualified immunity, where officer repeatedly sought treatment for inmate and relied on hospital physician's opinion that inmate was fit for incarceration); *King v. Kramer*, 680 F.3d. at 1018 (no deliberate indifference where officers "lacked the capacity to judge whether [the nurse] made an inappropriate diagnosis" and therefore had no reason to be concerned that inmate was being mistreated).[7]

Again, these cases are inapposite. Defendants watched Trevor die a slow, painful, and torturous death while he was at ACJ. They watched him deteriorate to a point of immobility and semi-consciousness. They watched his condition decline *despite* receiving care from the ACJ medical department—care that was obviously insufficient to treat his wounds, much less prevent his drawn-out suffering. They knew that Trevor was in danger. And still, they did nothing.

Plaintiff has properly pleaded facts that any other reasonable jail official would recognize as violative of Trevor's constitutional right to be free from cruel and unusual punishment.

---

[7] *King* is not a qualified immunity case. Because the Court held that there was no constitutional violation, it does not include a discussion of whether the alleged violation was "clearly established."

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants Clevenger and Litchfield's motion to dismiss the claims against them.

Date: October 13, 2025

/s/ Rosalie B.C. Wennberg
Taylor A. Asen, Esq., Me. Bar No. 5832
Rosalie B.C. Wennberg, Esq.,
   Me. Bar No. 10316
*Attorneys for Plaintiff*
Gideon Asen, LLC
95 Main Street, #5
Auburn, ME  04210
(207) 206-8982
service@gideonasenlaw.com